Leslie A. DODD et al., Plaintiffs,

v.

John R. RUE et al., Defendants.

No. C–1–79–348.

United States District Court,
S. D. Ohio, W. D.

Aug. 16, 1979.

William Flax, Cincinnati, Ohio, for plaintiffs.

Nicholas A. Pittner, Columbus, Ohio, of counsel, for Brown.

C. R. Beirne, John A. Lloyd, Jr., Robert J. Hollingsworth, Cincinnati, Ohio, for remaining defendants.

## OPINION

DAVID S. PORTER, Chief Judge:

This case is before the Court on plaintiffs' motion to remand (doc. 3). Removing defendant Brown has filed a memorandum contra (doc. 6), to which plaintiffs have filed a reply (doc. 7) so the motion is ripe for decision. S.D.Ohio R. 3.5.2. Oral argument was held on the motion on Friday, July 13, 1979. At that hearing, the remaining defendants (members of the Cincinnati Board of Education and the Superintendent of the Cincinnati Public Schools) stated that they were "indifferent" to the resolution of the motion to remand. These defendants have subsequently filed a motion to dismiss for failure to state a claim (doc. 9). Fed.R. Civ.Pro. 12(b)(6). Plaintiffs have also filed

a "motion" for an "interlocutory order staying reassigning of plaintiff children" (doc. 8). We need not reach the merits of either motion since we have determined that the case should be remanded to state court.

As basis for removal, defendant Brown relies on 28 U.S.C. §§ 1441(b), 1443(2). These sections provide:

§ 1441 *Actions removable generally*

.    .    .    .    . .

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.    .    .    .

§ 1443 *Civil Rights cases*

Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

.    .    .    .    .

(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

In *Greenwood v. Peacock*, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966), the Supreme Court concluded that

the history of § 1443(2) demonstrates convincingly that this subsection of the removal statute is available only to federal officers and to persons assisting such officers in the performance of their official duties (384 U.S. at 815, 86 S.Ct. at 1805).

Defendant Brown accordingly argues that: (1) in his role of drafting and advocating a Resolution before the Cincinnati School Board ordering racial integration of the public schools, he was acting to implement the equal protection mandate of *Brown v. Board of Education (Brown II)*, 349 U.S. 294, 299, 75 S.Ct. 753, 99 L.Ed. 1083 (1955) and hence must be considered a "federal officer" or "person assisting such offi-

cer" for the purpose of § 1443(2) and; (2) in any case, he is charged with the failure to abide by a fiduciary duty and he contends that this refusal was based on the ground that it would be "inconsistent with" the equal protection clause.

■ · At least with respect to the "color of authority" clause of the statute, it is clear that defendant's argument is without merit. Defendant Brown, at the time of the acts complained of, was neither a "federal officer" nor a "person assisting such officers in the performance of their official duties" within § 1443(2). *Greenwood v. Peacock*, 384 U.S., at 815, 86 S.Ct. 1800. The cases cited by defendant are all distinguishable in that they involved school board defendants acting pursuant to a federal court order to desegregate. *See Bohlander v. Independent School District No. 1*, 420 F.2d 693 (10th Cir. 1969); *Concerned Citizens for Neighborhood Schools, Inc. v. Board*, 379 F.Supp. 1233 (E.D.Tenn.1974); *Linker v. Unified School District # 259*, 344 F.Supp. 1187, 1195 (D.Kan.1972); *Burns v. Board of School Commissioners*, 302 F.Supp. 309 (S.D.Ind.1969), aff'd, 437 F.2d 1143 (5th Cir. 1971). *See also Armeno v. Bridgeport Civil Service Comm'n.*, 446 F.Supp. 553, 556–57 (D.Conn.1978). No such order exists in this case. Although we are sympathetic to defendant's argument that such a distinction tends to punish voluntary good faith efforts by school boards to comply with the constitutional mandate of *Brown v. Board* by denying such school board officials a federal forum, we think, in light of the Supreme Court's heavy emphasis upon the historical underpinnings of the § 1443(2) "color of authority" clause, that this distinction is dispositive. *See* 384 U.S., at 814–24, 86 S.Ct. 1800.

■ With respect to the "refusal to act" clause of § 1443(2), however, the issue is not so clear. Defendant Brown's argument is that his "refusal" to abide by the alleged fiduciary duty which plaintiffs claim he breached was based on the ground that it would be "inconsistent with" the equal protection clause of the Fourteenth Amendment and hence removal was proper under the second clause to § 1443(2). In *Greenwood*, the Supreme Court stated that "removal under [the "refusal to act"] language is available only to state officers." *Greenwood v. Peacock*, 384 U.S., at 824 n. 22, 86 S.Ct. 1810. The Court, however, did not elucidate the relationship of the two clauses—*i. e.*, whether the limitation on the first clause set out above applies equally to the second. Since we think there is no question that the equal protection clause of the Fourteenth Amendment is a "law providing equal rights" within § 1443(2) (*see Georgia v. Rachel*, 384 U.S. 780, 792, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966); *New York v. Galamison*, 342 F.2d 255, 269, 271 (2d Cir. 1965) (Friendly, J.)), the question before us is whether the "refusal to act" clause of § 1443(2) may be invoked by a class of defendants broader than the class mandated under the first clause in *Greenwood*.

■ The only case we have been able to find on this point is *Bridgeport Ed. Ass'n. v. Zinner*, 415 F.Supp. 715 (D.Conn.1976) cited to us by defendant Brown. In that case, Judge Newman extensively analyzed the history of the "refusal to act" clause of § 1443(2) and discussed its relationship to the "color of authority" clause. Based on his analysis, he concluded that removal was proper for any official acting under color of state law who alleged that he subjectively refused to act based on a "good faith belief" that the act would be inconsistent with federal law. *See* 415 F.Supp., at 717–24. For the reasons stated below, we respectfully disagree.

First, we think such an interpretation puts a considerable strain on the language of the statute itself. As Judge Newman noted in *Zinner*, the original class of defendants referred to in the predecessors of § 1443(2) *for both clauses* was "any officer, civil or military, or other person." Civil Rights Act of 1866, § 3, 14 Stat. 27. *See also* Rev.Stat. § 641 (1874). This was the language seized upon by the Supreme Court in holding that the "color of authority" clause could only be invoked by "federal officers or agents or those authorized to act with or for them." *See* 384 U.S., at 814–24,

86 S.Ct. at 1810. As Judge Newman admitted, to adopt his interpretation requires that

> the single referent 'officer, civil or military, or other person' means one thing for the 'color of authority' clause and something else for the 'refusal' clause. (415 F.Supp., at 720).

We find no basis for such a construction in the statute.[1]

1. Judge Newman reached his conclusion based upon the following statement by Representative James Wilson of Iowa, floor manager of the Civil Rights Bill of 1866, in offering the "refusal to act" clause by amendment to the bill.

> Mr. Wilson, of Iowa. I will state that this amendment is intended to enable State officers, who shall refuse to enforce State laws discriminating in reference to these rights on account of race or color, to remove their cases to the United States courts when prosecuted for refusing to enforce those laws. I call for the previous question.
>
> The previous question was seconded, and the main question ordered; and under the operation thereof the amendment was agreed to. (Cong. Globe, 39th Cong., 1st Sess. 1367 (1866).

Since this was the only statement in support of the amendment, Judge Newman reasoned that Wilson did not intend to refer to only a narrow range of state officers and therefore it should apply to any state officer confronted with a good faith belief of an "inconsistency" between state law and federal law providing for civil rights.

Representative Wilson, however, offered this amendment immediately following his offering of a committee amendment striking the general term "civil rights and immunities" from Section 1 and instead enumerating the rights covered by the Bill. This was in accord with Wilson's position that Section 1 (subsequently embodied in 42 U.S.C. § 1982) was a "measure of limited and definite objectives" designed to counter the notorious Black Codes enacted throughout the South. See Bickel, the Original Understanding and the Segregation Decision, 69 Harv.L.Rev. 1, 14 n. 35, 16–29 (1955). As he stated at the time the committee amendment was offered:

> Mr. Wilson, of Iowa. Mr. Speaker, the amendment which has just been read proposes to strike out the general terms relating to civil rights. *I do not think it materially changes the bill*; but some gentlemen were apprehensive that the words we propose to strike out might give *warrant for a latitudinarian construction not intended.* (Cong. Globe, 39th Cong., 1st Sess. 1366 (1866)) (Emphasis added.)

Second, as Magistrate Latimer's opinion (attached as an appendix to Judge Newman's ruling) demonstrates the previous cases permitting removal under § 1443(2) have involved a "manifest and specific direction from federal law [either in the form of statute or judicial decision] to act in a particular manner." 415 F.Supp., at 725–26. In other words, the standard by which the defendants' proposed actions are

The statute as amended (and passed) reads as follows:

> That all persons born in the United States and not subject to any foreign Power, excluding Indians not taxed, are hereby declared to be citizens of the United States; and such citizens of every race and color, without regard to any previous condition of slavery or involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall have the same right to make and enforce contracts, to sue, be parties, and give evidence, to inherit, purchase, lease, sell, hold, and convey real and personal property, and to full and equal benefit of all laws and proceedings for the security of person and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, and penalties, and to none other, any law, statute, ordinance, regulation, or custom to the contrary notwithstanding.

Plainly, Wilson's "refusal to act" amendment was offered with the intention of providing *only* those state officers confronted with a conflict between *the specifically enumerated rights* of section 1 and "any law, statute, ordinance, regulation or custom" of the state (such as the Black Codes) the opportunity to remove. Such state officers, in acting to carry out the provisions of section 1, instead of the patently inconsistent provisions of the Black Codes, could be considered as "assisting a federal officer in the performance of his duties" by refusing to enforce State laws discriminating in reference to the *enumerated* rights from section 1. Thus, we think Judge Newman's construction puts an unduly broad interpretation on the intent of the framers of this section of the Civil Rights Act. *Compare* Amsterdam, Criminal Prosecutions Affecting Federally Guaranteed Civil Rights: Federal Removal and Habeas Corpus Jurisdiction to Abort State Court Trials, 113 U.Pa.L. Rev. 793 (1965). *See generally* R. Berger, Government by Judiciary: The Transformation of the Fourteenth Amendment (1977). *See also Detroit Police Lieutenants & Sergeants Ass'n v. City of Detroit,* 597 F.2d 566 at 567–568 (6th Cir. 1979).

deemed "inconsistent with" federal law is, we think, higher than the "good faith belief" test enunciated by the *Zinner* court. *See* note 1 *supra*. *Compare* 415 F.Supp., at 722–23 with 726. As Magistrate Latimer correctly points out

> The federal officer (or his authorized agent) entitled to remove is one brought before a state court as the result of his performance of duty imposed by federal law; state law must of course give way when plainly repugnant to explicit federal guarantees of equal treatment impelling such affirmative law enforcement, and it is fully consonant with the federal officer's removal privilege to extend a corresponding choice of forum to the state official assailed for non-enforcement of discriminatory local law. An open-ended interpretation of the latter privilege, however, would constitute a patent and unjustifiable departure from the uniformly narrow construction given civil rights removal provisions; the state officer petitioning for removal should at least be in a position to allege square and definite inconsistency between the state law obligation at issue and controlling federal law, whether demonstrated by conflicting specific terms of national and local enactments, *cf. O'Keefe v. New York City Board of Elections*, 246 F.Supp. 978 (S.D.N.Y.1965), by specific judicial directive, *cf. Burns v. Board of School Commissioners, supra*, or even perhaps by reference to a fundamental, established legal principle of general application as in the hypothetical instance of "a teacher . . . being prosecuted for having admitted black children to a school in which racial segregation was required by state law," *New York v. Horelick, supra*, 424 F.2d [697] at 703 [2nd Cir.]. (415 F.Supp., at 726).

Defendant Brown herein does not allege such a "square and definite inconsistency"; rather, we have before us a vaguely defined claim that defendant Brown's fulfillment of his fiduciary duty (as alleged by plaintiffs) would be "inconsistent with" the equal protection clause. We think such a claim is far from being clear. *Cf. Dayton Board of Education v. Brinkman*, 433 U.S. 406, 414, 97 S.Ct. 2766, 53 L.Ed.2d 851 (1977) *citing* 503 F.2d 684, 697 (6th Cir. 1974); *Deal v. Cincinnati Board of Education*, 244 F.Supp. 572 (S.D.Ohio 1965), *aff'd*, 369 F.2d 55 (6th Cir. 1966); *cert. denied*, 389 U.S. 847, 88 S.Ct. 39, 19 L.Ed.2d 114 (1967), *aff'd on supplementary findings*, 419 F.2d 1387 (6th Cir. 1969), *cert. denied*, 402 U.S. 962, 91 S.Ct. 1630, 29 L.Ed.2d 128 (1971). We think defendant's apprehension, however well intentioned or subjectively felt, "is an insufficient substitute for an expressly claimed, direct and immediate clash of opposing duties." 415 F.Supp., at 726.

■ Finally, we think that adoption of the *Zinner* standard would result in a "wholesale dislocation of the historic relationship between the state and the federal courts." 384 U.S., at 831, 86 S.Ct., at 1814. The *Zinner* standard, in effect, would become a broad exception to the general rule that federal jurisdiction cannot be created by the presence of a federal defense. *See Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *PAAC v. Rizzo*, 502 F.2d 306, 313 (3d Cir. 1974). *See also* C. Wright, Law of Federal Courts § 38, at 148–49. This Court is not inclined to read § 1443(2) to permit federal court determination of every state law inquiry into a local official's conduct in which the defendant's position is conceivably susceptible to ultimate indication by a sophisticated analysis under federal anti-discrimination law of unsettled application to his particular circumstances. For that reason, we conclude that defendant Brown may not rely on the "refusal to act" clause of § 1443(2) as a basis for removal.

■ In order to support removal under 28 U.S.C. § 1441(b), it must appear from the complaint that it could have originally been brought in federal court. *Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). Plaintiffs herein disclaim any intent to raise a federal question and our review of the complaint reveals allegations of state constitutional and common law violations. We therefore think that removal is not proper under § 1441(b).

Based on our analysis above, it appears that this case was removed improvidently and without jurisdiction. We therefore conclude that it must be remanded to state court. 28 U.S.C. § 1447(c). Plaintiffs' request for costs assessed against defendant Brown is denied.