# BRADLEY ET AL. *v.* SCHOOL BOARD OF CITY OF RICHMOND ET AL.

No. 415.  Decided November 15, 1965.*

*Jack Greenberg, James M. Nabrit III, S. W. Tucker* and *Henry L. Marsh III* for petitioners in both cases.

*J. Elliott Drinard* and *Henry T. Wickham* for respondents in No. 415.  *Frederick T. Gray* for respondents in No. 416.

PER CURIAM.

The petitions for writs of certiorari to the Court of Appeals for the Fourth Circuit are granted for the purpose of deciding whether it is proper to approve school desegregation plans without considering, at a full evidentiary hearing, the impact on those plans of faculty allocation on an alleged racial basis.  We hold that the Court of Appeals erred in both these cases in this regard, 345 F. 2d 310, 319–321; 345 F. 2d 325, 328.

Plans for desegregating the public school systems of Hopewell and Richmond, Virginia, were approved by the

---

*Together with No. 416, *Gilliam et al. v. School Board of City of Hopewell et al.,* also on petition for writ of certiorari to the same court.

District Court for the Eastern District of Virginia without full inquiry into petitioners' contention that faculty allocation on an alleged racial basis rendered the plans inadequate under the principles of *Brown* v. *Board of Education,* 347 U. S. 483. The Court of Appeals, while recognizing the standing of petitioners, as parents and pupils, to raise this contention, declined to decide its merits because no evidentiary hearings had been held on this issue. But instead of remanding the cases for such hearings prior to final approval of the plans, the Court of Appeals held that "[w]hether and when such an inquiry is to be had are matters with respect to which the District Court . . . has a large measure of discretion," and it reasoned as follows:

> "When direct measures are employed to eliminate all direct discrimination in the assignment of pupils, a District Court may defer inquiry as to the appropriateness of supplemental measures until the effect and the sufficiency of the direct ones may be determined. The possible relation of a reassignment of teachers to protection of the constitutional rights of pupils need not be determined when it is speculative. When all direct discrimination in the assignment of pupils has been eliminated, assignment of teachers may be expected to follow the racial patterns established in the schools. An earlier judicial requirement of general reassignment of all teaching and administrative personnel need not be considered until the possible detrimental effects of such an order upon the administration of the schools and the efficiency of their staffs can be appraised along with the need for such an order in aid of protection of the constitutional rights of pupils." 345 F. 2d, at 320–321.

We hold that petitioners were entitled to such full evidentiary hearings upon their contention. There is no merit to the suggestion that the relation between faculty allocation on an alleged racial basis and the adequacy of the desegregation plans is entirely speculative. Nor can we perceive any reason for postponing these hearings: Each plan had been in operation for at least one academic year; these suits had been pending for several years; and more than a decade has passed since we directed desegregation of public school facilities "with all deliberate speed," *Brown* v. *Board of Education,* 349 U. S. 294, 301. Delays in desegregating school systems are no longer tolerable. *Goss* v. *Board of Education,* 373 U. S. 683, 689; *Calhoun* v. *Latimer,* 377 U. S. 263, 264–265; see *Watson* v. *City of Memphis,* 373 U. S. 526.

The judgments of the Court of Appeals are vacated and the cases are remanded to the District Court for evidentiary hearings consistent with this opinion. We, of course, express no views of the merits of the desegregation plans submitted, nor is further judicial review precluded in these cases following the hearings.

*Vacated and remanded.*